IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-HC-2008-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | FINDINGS OF FACTS AND |
| v. | ) | CONCLUSIONS OF LAW |
| | ) | |
| RICHARD ARTHUR SCHMIDT, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner, the United States of America, seeks to civilly commit Respondent Richard Schmidt (Respondent), as a "sexually dangerous person" under Section 302(4) of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), codified at 18 U.S.C. §§ 4247-4248. Petitioner proposes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

A.   **Procedural History**

The procedural history of this case is lengthy. A grand jury in Maryland issued a 10-count indictment against Respondent on February 5, 2004, that charged Respondent with various counts related to foreign and interstate travel to engage in sexual conduct with minors. United States v. Schmidt, No. 1:04-CR-52-JFM, Indictment [Ex. 9]. Respondent pleaded guilty to Count 7 (while a United States citizen traveling in foreign commerce from

1

the Philippines to Cambodia, for the purpose of engaging in illicit sexual conduct with a person less than 18 years old, in violation of 18 U.S.C. § 2423(b)) and Count 10 (as an adult United States citizen subject to the jurisdiction of the United States but outside the jurisdiction of any particular state or District travelling in foreign commerce to Cambodia and knowingly engaging in illicit sexual conduct with a minor male who at all times relevant had not attained the age of 16 years, in violation of 18 U.S.C. § 2423(c)). United States v. Schmidt, No. 1:04-CR-52-JFM, Judgment of Conviction [Ex. 8].

The district court in Maryland sentenced Respondent to 180 months imprisonment. United States v. Schmidt, No. 1:04-CR-52-JFM, Judgment of Conviction [Ex. 8].

On November 12, 2013, Respondent filed a 28 U.S.C. § 2255 motion to vacate his sentence. United States v. Schmidt, No. 1:04-CR-52-JFM, Docket Entry 48 (D. Md. Nov. 12, 2013). On September 11, 2015, the district court in Maryland issued a memorandum and order vacating Respondent's convictions on Counts 7 and 10. Id., [DE 96-97].

On December 3, 2015, the Bureau of Prisons ("BOP") certified Schmidt as sexually dangerous under the Adam Walsh Act. United States v. Schmidt, 5:16-HC-2076-BO, Docket Entry No. 1-2 at 1 (E.D.N.C. Apr. 13, 2016).

2

On April 13, 2016, Petitioner filed the 18 U.S.C. § 4248(a) petition and certification in this Court against Respondent. United States v. Schmidt, 5:16-HC-2076-BO, Docket Entry No. 1 (E.D.N.C. Apr. 13, 2016). Respondent's projected release date was January 20, 2017. Id., [DE 1-2].

On April 27, 2016, Respondent filed a motion in this Court to dismiss the § 4248(a) petition and certification. United States v. Schmidt, 5:16-HC-2076-BO, Docket Entry No. 9 (E.D.N.C. Apr. 27, 2016). The United States opposed the motion. Id., [DE 14]. The Court granted the motion. Id., [DE 18](granting motion to dismiss for lack of jurisdiction). The matter is on appeal. Id., [DE 28](E.D.N.C. May 26, 2016).

On January 4, 2017, the Fourth Circuit Court of Appeals reversed the judgment of the district court in Maryland and remanded the § 2255 matter for reinstatement of the judgment of conviction. United States v. Schmidt, 845 F.3d 153, 159 (4th Cir. 2017)(remanding case back to district court to reinstate conviction on Count 10 after holding Respondent's Conviction in Count 10 was valid).

On January 11, 2017, Petitioner filed the current certification which alleged Respondent was a sexually dangerous person under 18 U.S.C. § 4248(a). Pet. and Certification [DE 1].

B. **Personal, Family Data, and Work History**

Respondent was born in Baltimore, Maryland in 1942. PSR ¶ 54 [Ex. 10]; Schmidt Dep. 7:16-7:17 [Ex. 17]. Respondent's father died in 1975 and his mother passed away in 1992. PSR ¶ 54 [Ex. 10]; Schmidt Dep. 11:16-11:18 [Ex. 17]. Respondent's mother died leaving him $70,000.00. Zinik Report at Bates at 1688 [Ex. 7]. Respondent has one brother and Respondent has fathered no children. PSR ¶ 54 [Ex. 10]; Schmidt Dep. 11:19-13:17 [Ex. 17]).

Respondent graduated in 1961 from Severn School, a college preparatory school in Severna Park, Maryland. Watkins Report at 4 [Ex. 5]. Respondent attended the University of Maryland for two years and attended Anne Arundel Community College for one year. Schmidt Dep. 8:11-8:19 [Ex. 17]). Respondent served in the United States Army for three years and received an honorable discharged from service. Schmidt Dep. 8:22-8:25 [Ex. 17]. Thereafter, Respondent attended Towson University where he graduated with a Bachelor of Science degree in Elementary Education. PSR ¶ 56 [Ex. 10]; Schmidt Dep. 11:21-12:03 [Ex. 17].

Respondent taught at Maryland elementary schools. PSR ¶ 56 [Ex. 10]. Respondent also owned an electronics store. After Respondent's release from imprisonment in July 2000 on child sex related offenses he worked as a computer database developer, longshoreman, and volunteered as a participant in drug testing

4

conducted by the National Institute of Health.  Schmidt Dep. 79:05-80:16 [Ex. 17].

C.  **Criminal Convictions and Arrests**

On April 26, 1984, Maryland State Police officers arrested Respondent for multiple counts related to Respondent's sexual molestation of children.  PSR ¶ 27 [Ex. 10].  On August 30, 1984, Respondent, then 41 years old, entered a guilty plea to third-degree sexual assault.  PSR ¶ 27 [Ex. 10].  The victims in the case were two boys ages 9 and 10.  On October 1, 1984, the state court sentenced Respondent to a three-year term of imprisonment, all of which the court suspended except six months. PSR ¶ 27 [Ex. 10].

On September 24, 1984, law enforcement officers once again arrested Respondent for multiple counts related to Respondent's suspected sexual molestation of children. PSR ¶ 29 [Ex. 10].  On May 10, 1985, Respondent pled guilty to third-degree sexual offense and fourth degree sexual offense. PSR ¶ 29 [Ex. 10].  On October 16, 1985, the state court sentenced Respondent to two years imprisonment on the third-degree sexual offense conviction, eight years imprisonment on the fourth-degree sexual offense conviction, and five years' probation that included special conditions requiring Respondent to participate in sex offender treatment at the Bio-Sexual Psychohormonal Clinic at John Hopkins Hospital. PSR ¶ 29 [Ex. 10].

5

On November 4, 1986, law enforcement officers arrested Respondent after they conducted an investigation regarding sexual child abuse, child pornography, and third-degree sexual offenses committed against male children. PSR ¶¶ 33-34 [Ex. 10]. Respondent pleaded not guilty and the matter proceed to trial. On April 1, 1987, the jury found Respondent guilty of second and third sexual offense. PSR ¶ 33 [Ex. 10]. On June 24, 1987, the state court sentenced Respondent to 18 years imprisonment. PSR ¶ 33 [Ex. 10].

On July 17, 2000, Respondent was released from imprisonment. PSR ¶ 33 [Ex. 10]. Respondent was 57 years old at the time of his release on parole with seven years remaining on this sentence. Zinik Report Bates at 1688 [Ex. 7]. According to Respondent, he was not required to attend sex offender treatment as a condition of his release. Zinik Report Bates at 1688 [Ex. 7].

While on parole, and in violation of the terms of his parole, Respondent became acquainted with a 12-year-old boy he met at a swimming pool. Schmidt Dep. 82:05-84:04, 91:05-91:12 (awareness of conditions prohibiting association with minors) [Ex. 17]. The boy came from a broken home. The boy's mother was an alcoholic who subsisted on public assistance and the boy's father was not in the home nor part of the boy's life. Schmidt Dep. 85:10-87:13 [Ex. 17].

6

Respondent was sexually attracted to the boy and purchased the boy items, including lacrosse equipment and shoes. Schmidt Dep. 87:21-88:18 [Ex. 17]. Respondent also visited the boy at his home, took him to track meets, and entered him on a wrestling team. Schmidt Dep. 84:08-85:09 [Ex. 17].

Respondent's association with the boy lasted 8-9 months before law enforcement officials apparently became aware of the relationship. Schmidt Dep. 86:23-87:02 [Ex. 17]. Respondent became aware that local police officials questioned the boy. Schmidt Dep. 88:25-90:09 [Ex. 17]. Armed with that information, when police officers arrived at Respondent's apartment and knocked on his door at 2:00 a.m. Respondent did not answer. Schmidt Dep. 91:13-92:02 [Ex. 17]. Once the officers left, Respondent fled the apartment and checked into a motel. Schmidt 98:24-99:04 [Ex. 17].

Thereafter, Respondent contacted an acquaintance and told him that Respondent planned to leave the United States. Schmidt Dep. 92:05-92:12 [Ex. 17]. The acquaintance agreed to put Respondent in contact with a friend that lived in the Philippines. Schmidt Dep. 92:16-99:21 [Ex. 17]. Respondent was aware of the sex trade in Philippines and Southeast Asia prior to fleeing the United States. Schmidt Dep. 96:18-97:03 [Ex. 17].

Respondent's acquaintance contacted a friend in the Philippines who agreed to provide Respondent with a place to stay. In June 2002, Respondent fled the United States to avoid arrest

7

for violating his parole.  United States v. Schmidt, 845 F.3d 153, 155 (4th Cir. 2017).

Respondent stayed a few days with the mutual acquaintance and later secured a place to live in Davao, a town located 50 miles outside of Manila.  Schmidt Dep. 99:22-102:21 [Ex. 17].  There, Respondent secured employment as a database computer developer at an international school. Schmidt Dep. 109:02-109:10 [Ex. 17].

Within four months of arriving in the Philippines Respondent engaged in sexual contact with a boy who may have been 14 years old or possibly younger.  Zinik Report at Bates 1688 [Ex. 7]; Schmidt Dep. 102:22-103:23 [Ex. 17]. Respondent claims the sexual contact consisted of cuddling, caressing, and some body contact but denies that he engaged in fellatio or anal sex.  Schmidt Dep. 103:12-103:16 [Ex. 17].

Philippine law enforcement officials arrested Respondent for "sexually molesting young boys."  United States v. Schmidt, 845 F.3d 153, 155 (4th Cir. 2017).  The charges were unrelated[1] to the first boy that Respondent engaged in sexual contact with four months after he arrived in the Philippines.  Schmidt Dep. 104:17-105:10 [Ex. 17].  Schmidt denies engaging in sexual contact with

---

[1] Respondent's account of the basis of his arrest in the Philippines in his deposition differs slightly from his self- reported account to Dr. Zinik.  Respondent told Dr. Zinik that the boy reported their sexual contact to law enforcement officials after Respondent sought to end their relationship.  Zinik Report at Bates 1688-89 [Ex. 7].

the boy in the charged offense but admits that he was sexually attracted to the boy because of the boy's smooth skin and lack of body hair.  Schmidt Dep. 105:11-105:21 [Ex. 17].

In December 2003, while on pretrial release, Respondent traveled to Cambodia where he was later arrested by Cambodian law enforcement authorities for engaging in illegal sexual conduct with young boys.  United States v. Schmidt, 845 F.3d 153, 155 (4th Cir. 2017).  The authorities released Respondent on "police watch" only to discover that he raped another young boy within two days of his release.  Id.  Thereafter, Cambodian authorities deported Respondent to the United States where he faced numerous sex related criminal charges and later entered into a guilty plea to Count 10 of the indictment which charged him with illicit sexual conduct in Cambodia.  Id.

### CONCLUSIONS OF LAW

Petitioner seeks the commitment of Respondent pursuant to the Adam Walsh Act.  Petitioner may seek the civil commitment of certain individuals in the custody of the Federal Bureau of Prisons who are determined to be "sexually dangerous person[s]."  18 U.S.C. § 4248(d).

Petitioner must prove by clear and convincing evidence that Respondent is "sexually dangerous."  A person is sexually dangerous if he "has engaged or attempted to engage in sexually violent conduct or child molestation and . . . is sexually dangerous to

9

others." 18 U.S.C. § 4247(a)(5). To determine that a person is sexually dangerous to others, a court must find that he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." Id. § 4247(a)(6).

For the reasons that follow, the Court finds that Petitioner has met its burden by clear and convincing evidence and therefore orders Respondent committed to the custody of the Attorney General.

## A. **Respondent Has Engaged in or Attempted to Engage in Sexually Violent Conduct or Child Molestation.**

The Court finds that Petitioner has established by clear and convincing evidence that Respondent has engaged in or attempted to engage in sexually violent conduct or child molestation in the past. As the Fourth Circuit noted, Respondent "has been repeatedly convicted since 1984 for extensive and grotesque sex offenses involving young boys." United States v. Schmidt, 845 F.3d 153, 155 (4th Cir. 2017). Additionally, each expert or examiner has concluded that Respondent meets criteria on prong one of the Act. Hastings Report at Bates 1662-66 (p. 7-11) [Ex. 3]; Watkins Report at 7-12, 21 [Ex. 5]; Zinik Report at Bates 1684-90 (p. 2-8)[Ex. 7}; Plaud Report at 2 [Resp't Ex. 2]; Saleh Report at 2, 9-12 [Resp't Ex. 5].

B. **Respondent suffers from a serious mental illness, abnormality, or disorder.**

The Court also finds that Petitioner has established by clear and convincing evidence that Respondent suffers from a serious mental illness, abnormality, or disorder. Petitioner presented the testimony and reports of Drs. Hastings, Watkins, and Zinik to establish that Respondent suffers from a serious mental illness, abnormality, or disorder.

Drs. Hastings, Watkins, and Zinik each independently concluded that Respondent meets criteria for a finding of Pedophilic Disorder, Exclusive Type, Sexually Attracted to Males under the Diagnostic and Statistical Manual of Mental Disorders Fifth Edition ("DSM-5") based on Respondent's documented criminal acts involving molestation of boys for which he has engaged in repeatedly and has been sanctioned and his admission (to Drs. Hastings and Zinik) that he has a lifelong sexual interest in prepubescent and pubescent boys. Hastings Report at Bates 1671-72, [Ex. 3]; Watkins Report at 14, 21 [Ex. 5]; Zinik Report at Bates 1696-97 [Ex. 7].

Similarly, Dr. Plaud also diagnosed Respondent suffers from Pedophilic Disorder, Sexually Attracted to Males. Plaud Report at 2, 19-21 [Resp't Ex. 2]. Dr. Plaud, however, is uncertain whether Respondent's qualifies for a finding that Respondent's disorder is exclusive under the DSM-5. Plaud Report at 20 [Resp't Ex. 2].

11

Likewise, Dr. Saleh also finds Respondent meets criteria under prong two for Pedophilic Disorder, Sexually Attracted to Males. Saleh Report at 3, 11 [Resp't Ex. 5]. Dr. Saleh also found Respondent met criteria for Other Specified Paraphilic Disorder (based on Respondent's sexual attraction to pubescent males) and Other Specified Personality Disorder (with traits of Antisocial Personality Disorder). Saleh Report at 11 [Resp't Ex. 5].

The Court credits the reports and testimony of Drs. Hastings, Watkins, Zinik, Plaud, and Saleh that Respondent suffers from Pedophilic Disorder, Sexually Attracted to Males[2], and the disorder is a serious mental illness, abnormality, or disorder under the Adam Walsh Act.

C. **Serious difficulty in refraining from sexually violent conduct or child molestation if released.**

Petitioner has also proved by clear and convincing evidence that Respondent would have serious difficulty in refraining from sexually violent conduct or child molestation if released. The Court credits the reports and testimony of Drs. Hastings, Watkins, and Zinik in this area over that of Drs. Plaud and Saleh. The Court gives greater weight to the opinions of Drs. Hastings, Watkins, and Zinik. Their analysis of Respondent's sexual

---

[2] To the extent relevant, the Court credits the reports and testimony of Drs. Hastings, Watkins, and Zinik that Respondent's pedophilic disorder qualifies for the specifier as exclusive to children.

Case 5:17-hc-02008-BO   Document 55   Filed 01/09/18   Page 12 of 21

dangerousness is more thorough, better reasoned, and better supported by the record.

In order to establish this prong of the Adam Walsh Act Petitioner must establish by clear and convincing evidence that Respondent would have serious difficulty in refraining from engaging in sexually violent conduct or child molestation if released. United States v. Perez, 752 F.3d 398, 407 (4th Cir. 2014); United States v. Antone, 742 F.3d 151, 158 (4th Cir. 2014).

The Supreme Court held in Kansas v. Crane, 534 U.S. 411 (2002), that in order to civilly commit someone for sexual dangerousness "there must be proof of serious difficult in controlling behavior." Id. at 413. The Supreme Court noted that this standard allowed courts wide discretion in relying on a number of different factors relevant to sexual dangerousness.

Some of these factors are (1) failures while on supervision; (2) resistance to treatment; (3) continued deviant thoughts; (4) cognitive distortions; (5) actuarial risk assessments; (6) impulsiveness; and (7) historical offenses, both sexual and non-sexual. United States v. Wooden, 693 F.3d 440, 458, 462 (4th Cir. 2012). A court must also fully consider and account for why a detainee's positive incarceration conduct is overshadowed by other factors that warrant a finding that the detainee would have serious difficulty from refraining from engaging in sexually violent conduct or child molestation. Antone, 742 F.3d at 164-70.

Dr. Hastings determined that Respondent would have serious difficulty in refraining from engaging in child molestation based on Respondent's many arrests for child molestation that resulted in four convictions and numerous undetected victims, minimization of the invasiveness of his sexual offenses, above average actuarial risk assessment although the instruments have been adjusted for Respondent's advance age, and offending while under supervision. Hastings Report at Bates 1680 [Ex. 3]. Additionally, Dr. Hastings' report cites Respondent's lifelong pedophilic interest as exemplified by Respondent's 43-year sexual relationship with boys. Hastings Report at Bates 1681 [Ex. 3].

Dr. Watkins performed a precertification assessment for the certification review branch. Watkins Report at 1-3 [Ex. 5]. As part of her precertification evaluation, Dr. Watkins performed an assessment of Respondent's risk. Watkins Report at 15-22 [Ex. 5]. Dr. Watkins analyzed Respondent's risk of re-offense based on actuarial measures, empirically supported risk factors, reviewed relevant protective factors, and BOP guidelines. Watkins Report at 15-22 [Ex. 5].

Dr. Watkins used Static-99R, an actuarial instrument, to calculate Respondent's statistical risk of reoffense based on scores obtained on the instrument. Actuarial instruments assess the likelihood that an individual would commit a new sexual offense within a specified period. Watkins Report at 15 [Ex. 5]. Static-

14

99R allows an expert to assess a Respondent's level of risk by comparing Respondent's score to preselected samples of offenders that are most similar to Respondent. Watkins Report at 15 [Ex. 5]. Dr. Watkins determined that Respondent's total score on the Static-99R fell between three and four, which equated to a low-moderate\moderate-high risk category. Watkins Report at 15-17 [Ex. 5].

Dr. Watkins also examined empirically supported risk factors and found that there was significant evidence of sexual preoccupation based on Respondent's long-standing and repetitive sexual offending. Watkins Report at 18 [Ex. 5]. Dr. Watkins also found the presence of deviant sexual interests, emotional congruence with children, and resistance to rules and supervision. Watkins Report at 17-19 [Ex. 5]. With regard to resistance to rules of supervision, Dr. Watkins notes that Respondent committed all of his sexual offenses while Respondent was under supervision. Dr. Watkins also notes that Respondent's history of supervision failure, his failure to register as a sex offender, and his absconding from parole when he thought his arrest was imminent for associating with a boy in violation of his parole also demonstrate Respondent is sexually dangerous. Watkins Report at 19 [Ex. 5].

Dr. Watkins examined advanced age, physical condition, and time in the community offense free and determined that these factors did not act as a protective factor.

Respondent's first detected sexual offense and conviction occurred when he was 41 years old and his last conviction occurred when he was 61 years old. Watkins Report at 19. Additionally, Dr. Watkins found that Respondent did not suffer from a chronic condition that would limit his sexual dangerousness. Watkins Report at 19 [Ex. 5]. Lastly, Dr. Watkins considered Respondent's offense free time in the community and noted that his offense free time in the community since 1984 was a two-year period between 1985 and 1987 and a three-year period between 2000 and 2003. Watkins Report at 19 [Ex. 5]. Dr. Watkins points out that during the aforementioned periods Respondent was in the community he violated his probation by committing additional sexual offenses, violated parole (by associating with a minor), failed to register as a sex offender, absconded when he fled the United States, and committed new sexual offenses overseas. Watkins Report at 19-20 [Ex. 5].

Dr. Watkins also considered BOP guidelines published in the Federal Register, Volume 73, Number 225, 70278-70281. Dr. Watkins found the presence of a number of factors BOP considers including, Respondent's conviction for contact with victims of child molestation, his molestation of multiple boys, his inability to control his offending even while under supervision, and his unsuccessful completion of sex offender treatment. Watkins Report at 20 [Ex. 5].

16

Dr. Zinik determined that Respondent's actions demonstrated six dynamic risk factors, emotional congruence with children, lack of emotionally intimate relationships with adults, sexual coping, poor problem solving, poor cooperation with rules and supervision, and attitudes that support sexual offending.  Zinik Report Bates 1698-99 [Ex. 7].  The Court credits Dr. Zinik report and testimony in this area.

Dr. Zinik used two actuarial measures to assess Respondent's risk of reoffending, the Static-99R and Static-2002R.  Zinik Report at Bates 1699 [Ex. 7].  Respondent scored a five on the Static-99R and a six on the Static-2002R.  Zinik Report at Bates 1699 [Ex. 7]. These scores equate to an above average risk level for offenders in a group that attained such scores.  Zinik Report at Bates 1699 [Ex. 7].

Dr. Zinik also used the SVR-20, a measure that psychologist use to examine 20 risk factors for offenders convicted or alleged to have committed a sexual offense.  Zinik Report at Bates at 1700 [Ex. 7].  Dr. Zinik determined that 7 out of 20 risk factors were present in Respondent's case and 2 factors may apply as well. Zinik Report at Bates at 1700 [Ex. 7].  Most notable to Dr. Zinik are Respondent's high density sexual offenses (Item 12) and escalation of frequency of sexual offending based on Respondent's 4 arrest between 1984-1986 (Item 16) and rapid and frequent sexual offending

17

in Southeast Asia. Zinik Report at Bates at 1700 [Ex. 7]. The Court credits Dr. Zinik's analysis.

Dr. Zinik also analyzed age as a protective factor. Dr. Zinik, like all the experts, notes that age is ordinarily a protective factor. Dr. Zinik determined that age, however, is not a protective factor in Respondent's case. Zinik Report at Bates at 1701 [Ex. 7].

The Court has fully considered Respondent's age as a protective factor. The Court credits Drs. Hastings', Watkins', and Zinik's analysis that age in Respondent's case is not a protective factor.

The Court notes that Respondent was first convicted in 1984 of two separate sexual offenses involving multiple boys when Respondent was 41 years old. Zinik Report at Bates at 1685-86 [Ex. 7]. Respondent was released from imprisonment on March 1, 1985, and within six months was rearrested and charged with sexual offenses. Zinik Report at Bates at 1686 [Ex. 7]. Although the arrest did not result in convictions, Respondent acknowledged he touched boys and watched boys playing soccer while in sex offender treatment. Zinik Report at Bates 1686 [Ex. 7].

On November 4, 1986, law enforcement officials arrested Respondent, then 43 years old, on numerous charges relating to sexual offenses against children. PSR at 18 [Ex. 10]. Respondent pleaded not guilty and was convicted after trial. PSR at 18 [Ex.

18

10].   The state court sentenced Respondent to 18 years imprisonment.   PSR at 18 [Ex. 10].

Despite Respondent's advanced age upon his release from imprisonment, Respondent fell back into a familiar pattern of targeting young boys and disregard for court-imposed terms of probation or parole.  Respondent's inability to control his sexual conduct after significant legal sanctions demonstrates the strength grip of Respondent's pedophilic disorder and the likelihood that Respondent would reoffend sexually.  It is in this area the Court finds analysis provided by Drs. Plaud and Saleh lacking.

The Court acknowledges that although Respondent's actuarial scores represent group averages and do not equate necessarily with Respondent's individual risk of reoffending.  The actuarial scores, however, when taken in conjunction with Respondent's present dynamic risk factors, particularly his history of relatively rapid reoffending while under supervision, outweighs Respondent's age as a protective factor and Respondent's institutional compliance.

Petitioner has proved by clear and convincing evidence that based on Respondent's pedophilic disorder, a serious mental illness, Respondent would have serious difficulty in refraining from engaging in sexually violent conduct or child molestation. Therefore, Respondent is a sexually dangerous person under the

19

Adam Walsh act. Thus, the Court commits Respondent to the custody of the Attorney General.

Respectfully submitted, this 9th day of January 2018.

ROBERT J. HIGDON, JR.
United States Attorney


BY: /s/ Michael G. James
      MICHAEL G. JAMES
Assistant United States Attorney
Attorney for Petitioner
Civil Division
310 New Bern Avenue
Suite 800 Federal Building
Raleigh, NC 27601
Telephone: (919) 856-4530
Facsimile: (919)856-4821
Email: Mike.James@usdoj.gov
NY Reg. 2481414

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that the undersigned served a copy of the foregoing Findings of Fact and Conclusions of Law upon Counsel for Respondent by electronically filing said foregoing Findings of Facts and Conclusions of Law with the Clerk of Court on January 9, 2018, using the CM/ECF system to:

    Raymond C. Tarlton
    Tarlton Polk, PLLC
    Post Office Box 1386
    150 Fayetteville Street
    Suite 930 (Zip 27601)
    Raleigh, NC 27602

                        /s/ Michael G. James
                        MICHAEL G. JAMES
                        Assistant United States Attorney
                        Attorney for Petitioner
                        Civil Division
                        3l0 New Bern Avenue
                        Suite 800 Federal Building
                        Raleigh, NC 2760l
                        Telephone: (919) 856-4530
                        Facsimile: (919)856-4821
                        Email: Mike.James@usdoj.gov
                        NY Reg. 2481414