UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-HC-02008-BO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Petitioner,<br><br>v.<br><br>RICHARD SCHMIDT,<br>Respondent. | **RESPONDENT SCHMIDT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Respondent RICHARD SCHMIDT, by and through his undersigned counsel, requests that this Court enter the following findings of fact and conclusions of law in this matter, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. In support:

## INTRODUCTION

On January 11, 2017, Petitioner United States of America ("the government") initiated this proceeding seeking to have Respondent Richard Schmidt ("Respondent" or "Schmidt") civilly committed as a sexually dangerous person under the Adam Walsh Child Protection and Safety Act of 2006 ("the Act"), codified at 18 U.S.C. §§ 4247–4248. [D.E. 1.] Mr. Schmidt served a 180 month sentence on an underlying conviction for traveling in foreign commerce and engaging in sexual activity with a minor in Cambodia, which expired on January 20, 2017, and he currently is detained at FCI-

Butner Medium I awaiting the outcome of this proceeding. *Id*. Pursuant to 18 U.S.C. § 4247(d), the Court conducted an evidentiary hearing on January 10, 2018 and January 24, 2018.

After considering the testimony at the evidentiary hearing, the evidentiary record, and the parties' submissions, this Court concludes that the government has failed to establish by clear and convincing evidence that Respondent is sexually dangerous to others as required by the Act and the Constitution.

**FACTUAL BACKGROUND**

Schmidt was born in 1942 in Baltimore, Maryland. He is now 75 years old. His father was a sheet metal draftsman, and his mother was a homemaker. Both parents are now deceased. [R.E. 2 at 1]. Mr. Schmidt did not experience any physical, emotional, mental or substance abuse growing up and felt he was brought up in a good home environment. *Id*. Mr. Schmidt has a brother, however, they are not in contact today. *Id*.

Mr. Schmidt graduated high school from the Severn School in 1961. He enrolled in the University of Maryland where he attended for about a year then realizing he wanted to join the military. He took time off from college, and then joined the Army for a three-year period. Upon his discharge from the Army Mr. Schmidt enrolled at Towson State University in January, 1970. He graduated in June 2, 1974 with a Bachelor of Science in Elementary Education degree. *Id*.

There are no indications of disciplinary issues or expulsions from school as a juvenile.

Mr. Schmidt took time off from college in February, 1964 to enlist in the Army. Records show he stated he worked in the Special Services, as a physical education specialist, as a light vehicle driver, a radio dispatcher, and as a lifeguard. He received an Honorable Discharge from the Army on December 12, 1966. [R.E. 2 at 7].

Mr. Schmidt was an elementary school teacher in the Anne Arundel County Public Schools from September 1, 1973 to June 30, 1979, working at Eastport Elementary School and Rolling Knolls Elementary School. School records have not revealed any inappropriate behavior on the part of Mr. Schmidt while he was employed there. [R.E. 2 at 8]. Mr. Schmidt reportedly moved to Maryland's Eastern Shore until 1985 when he moved back to Baltimore. While on the Eastern Shore of Maryland he owned and operated a Radio Shack franchise. He was then incarcerated in Baltimore City serving a twenty year sentence until his release in July, 2000. After release, Mr. Schmidt lived in Baltimore where he worked part time for the National Institutes of Health in Bethesda, Maryland as a Clinical Center Research Volunteer, until he left to live in Angelos City, Philippines in June, 2002. *Id*.

From August, 2002 to August, 2003 he worked as a computer system developer at Westfields International School. Mr. Schmidt admitted to not notifying the school of

his prior conviction and was around children while employed there. He reported going to the Philippines because of a Violation of a Parole Warrant at the time. He continued to live in the Philippines until December, 2003 when he then moved to Phnom Penh, Cambodia where he reportedly worked for Action English Language where he taught English to adults that were had already begun to learn the language. Mr. Schmidt stated he did not make this employer aware of his prior conviction, and stated he was not in contact with children during this position. Mr. Schmidt has been unemployed since his arrest on December 27, 2003. *Id*.

Mr. Schmidt has never had a quasi-intimate or serious relationship with a woman or a man. *Id*. He has never been married. Upon release, Mr. Schmidt plans to live in Maryland in a half-way house (or residential reentry center-RRC) at U.S. Probation's direction. [R.E. 6]. Mr. Schmidt has informed the experts in this case that he has been planning to secure living expenses through Social Security as well as the U.S. Department of Veterans Affairs. His federal criminal sentence requires him to be placed on supervised release for life. *Id*. He will also be required to participate in sex offender treatment, his whereabouts will be monitored at all times through a Global Positioning Satellite ("GPS") device, and will not be permitted to be within one mile of any public or private school. *Id*. Finally, U.S. Probation will require him to register as a sex offender. *Id*. Mr. Schmidt testified in court, and told the experts, that he plans on complying with U.S. Probation's conditions.

In the context of Mr. Schmidt's age (75 years old), Mr. Schmidt has stated that significant difficulties in achieving or maintaining a penile erection. Mr. Schmidt further stated that for the past 8 years he has been incapable of achieving a penile erection. He describes his current masturbatory practices as nonexistent, due to his erectile dysfunction. He reports occasional sexual fantasies involving sexual activities with teenage boys, but stated that "they are not frequent, and not as important to me as they used to be." [R.E. 2 at 8].

Schmidt does not have any substance abuse history. Nor does he report any history of mental health issues, other than sex offender related diagnosis and treatment, nor has he received any mental health treatment during his current BOP sentence. Schmidt does not have any juvenile criminal history or any non-sexual criminal history.

Mr. Schmidt's first conviction was in 1984. On August 30, 1984 Mr. Schmidt pled guilty to Third Degree Sexual Offense (count 4) and on October 1, 1984 he was sentenced to three years, all but six months suspended with three years probation. [R.E. 2 at 9]. During a clinical interview Mr. Schmidt admitted to this sexual conduct with the two victims. He noted that he took one bath with the boys, not two. He acknowledged rubbing and otherwise touching the two boys, and denied any oral contact, or any digital or penile penetration. *Id*.

Mr. Schmidt's second conviction was in 1985. He pled guilty to one count of Sexual Offense Third Degree and one count Child Abuse on May 10, 1985. Mr. Schmidt was sentenced to two years on the Sexual Offense Third Degree and eight years on the Child Abuse charge. The time was suspended, with credit for time served and Mr. Schmidt was given five years probation. Mr. Schmidt had to report to the Bio Sexual Psycohormonal Clinic at Johns Hopkins Hospital where he had to agree to receive injections of Depo-Provera and pay the costs within six months of release from a halfway house or clinic as special conditions of this probation. All other counts were Nolle Prosed. It was also reported Mr. Schmidt violated this probation but the violation was dismissed on January 14, 1991. *Id*.

Mr. Schmidt's third conviction was in 1987. After a trial, on April 1, 1987, he was convicted on five counts of Sexual Offenses Second Degree and on four counts of Sexual Offenses Third Degree. [R.E. 11-12]. On June 24, 1987, Mr. Schmidt was sentenced to eighteen years on the Sexual Offense Second Degree Charges and ten years on the Sexual Offense Third Degree Charges; all counts concurrent. Mr. Schmidt was released on Mandatory Release on July 17, 2000. *Id*. During a clinical interview, Mr. Schmidt acknowledged that he did engage in the sexual behavior noted above, including touching and mutual masturbation with the boy, as well as placing his penis between the boy's legs. He denied oral contact, and stated that he has never had interest in

oral sex or engaged in this behavior with any victim. It was this issue that caused him to take this case to trial, as he denied ever engaging in oral sexual contact with the victim. *Id*.

Mr. Schmidt's fourth conviction was in 2004. In a Statement of Facts filed in the District of Maryland:

> "In December, 2003, the defendant, an adult citizen of the United States, traveled in foreign commerce from the Philippines to Cambodia, for the purpose of engaging in illicit sexual conduct as defined in Title 18, United States Code, Sections 2423(f) and 2246, with a person less than eighteen years of age that would be in violation of Chapter 109A of Title 18, United States Code…"

*Id*. at 12. Mr. Schmidt pled guilty and received a sentence of 15 years or 180 months on August 26, 2004. *Id*. During the clinical interview Mr. Schmidt admitted that in total he engaged in sexual activities while in the Philippines and Cambodia with approximately five to six males, whom he described as living on the streets. The sexual contact included fondling and touching two 13-year-old boys. He further stated that he had one victim in Cambodia, who originally told him he was 16 years old, but later learned may have been 13 or 14 years old. He also acknowledged taking a photograph of the boy while he was showering. *Id*. at 13.

Mr. Schmidt also admitted to sexual contact with male children for which he was not prosecuted. *Id*. at 14-15. Mr. Schmidt has admitted to fondling and otherwise touching three young boys between the ages of 12 to 14, he being between the ages of 18

and 22 years old at the time. The admitted sexual contact occurred approximately one time every two to three months during this period. Mr. Schmidt admitted to a total of five to six additional male victims after his discharge from the United States Army, again involving the same sexual topography. There are no indications that he engaged in any of this conduct while serving in the military. *Id*.

Mr. Schmidt's conduct while in the federal Bureau of Prisons ("BOP") has been exemplary and infraction free. He has also taken numerous classes, including: including: Beginning German, Western Civilization I and II, Computer Skills VT, Typing Class, Early History 20th Century, Wellness Initiative - Seniors, 3 Cinemas Classes, ABS and Back USP, Anatomy USP, PG Forces of Nature, PG Intro to Health. *Id*. at 16.

Mr. Schmidt acknowledged in his testimony that he was to blame for his behavior. Mr. Schmidt was able to identify justifications he used in his offending. Overall, Mr. Schmidt appeared honest in his reporting given his acknowledgement of pedophilic arousal and having undetected victims.

## DISCUSSION

The Adam Walsh Act provides for the civil commitment of "sexually dangerous person[s]." 18 U.S.C. § 4248. In order to prove that Schmidt is a "sexually dangerous person," the government must prove three elements by clear and convincing evidence:

(1) Schmidt previously "engaged or attempted to engage in sexually violent conduct or child molestation"; (2) Schmidt currently "suffers from a serious mental illness, abnormality, or disorder" as a result of which; (3) Schmidt "would have serious difficulty in refraining from sexually violent conduct or child molestation if released." *United States v. Springer*, 715 F.3d 535, 538 (4th Cir. 2013) (quoting from 18 U.S.C. §4247(a)(5)-(6), and *United States v. Hall*, 664 F.3d 456, 463 (4th Cir. 2012)). Clear and convincing evidence is evidence "of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *Springer*, 715 F.3d at 358 (citing *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001).

Five experts testified at the evidentiary hearing(s) or bench trial. Fabian Saleh, M.D. and Joseph Plaud, Ph.D. testified that Schmidt did not meet criterial for commitment, while Gary Zinik, Ph.D., Mark Hastings, Ph.D., and Robin Watkins, Ph.D. (BOP), testified that Schmidt did meet criteria for commitment under the Act. Schmidt also testified at the hearing.

## PRONG I: CHILD MOLESTATION

The Court finds that the first criterion for commitment under the Act, that Schmidt has "engaged or attempted to engage in sexually violent conduct or child molestation" in the past, is satisfied. 18 U.S.C. § 4247(a)(5). All of the experts agree that

Schmidt engaged in child molestation by virtue of his convictions and his own admissions, and Schmidt does not dispute that the government has proven the first element, as he conceded the issue at the hearing.

### PRONG II: SERIOUS MENTAL ILLNESS, ABNORMALITY, OR DISORDER

To meet its burden of establishing that Schmidt is "sexually dangerous to others," the government must also prove that he "suffers from a serious mental illness, abnormality, or disorder." 18 U.S.C. § 4247(a)(6). All five experts opine that Schmidt can be diagnosed with Pedophilic Disorder under the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition ("DSM-V"). Drs. Hastings, Zinik, and Watkins specify that his pedophilic Disorder is of the exclusive type, sexually attracted to males. Dr. Plaud opines that while there is some indication that his Pedophilic Disorder is of the exclusive type, there is also data in the records supportive of a non-exclusive type. Dr. Saleh also opined that his Pedophilic Disorder is of a non-exclusive type. Dr. Saleh noted that while Mr. Schmidt presents with a paraphilic disorder diagnosis, there is no evidence to suggest that Mr. Schmidt, now at 75 years old, is currently symptomatic. [R.E. 5 at 13]. During the hearing and to the experts, Schmidt readily admitted to a lifelong history of pedophilic arousal to prepubescent and pubescent males age 8 to 16. He has been convicted of sexual offenses against prepubescent and pubescent males on 4 separate occasions and had admitted to having some victims during his life where he was never charged.

At the hearing, Schmidt also conceded this second prong of the inquiry under the Act. Other than Pedophilic Disorder, none of the experts diagnose Schmidt with a personality disorder, or any other mental illness, abnormality or disorder. Therefore, the Court finds the government has met its burden to establish this second prong of the Act by clear and convincing evidence.

## PRONG III: SERIOUS DIFFICULTY REFRAINING

To meet its burden on the third prong of the Act, the government must prove by clear and convincing evidence that as a result of his Pedophilic Disorder, Schmidt would have serious difficulty in refraining from sexually violent conduct or child molestation if released. 18 U.S.C. § 4247(a)(6). In *Kansas v. Crane*, 534 U.S. 407 (2002), the United States Supreme Court held that in order to civilly commit someone for sexual dangerousness "there must be proof of serious difficulty in controlling behavior." *Id.* at 413. This standard allows courts wide discretion in relying on a number of different—it does not have "a particularly narrow or technical meaning;" nor is it demonstrable with "mathematical precision." *Id.* In order to assist their evaluation of this third prong of the Act's inquiry, all four experts performed an analysis of static risk factor assessment methods as well dynamic risk factor assessment methods. The Court will address both of those methods.

As for the static risk factor analysis, Dr. Saleh scored Mr. Schmidt as a 5 on the Static 99R, but he noted that he did not correlate the score to risk categories or ratios given the instrument's inability to answer the specific questions as set forth under the Adam Walsh Act. [R.E. 5 at 12 n. 7].

Dr. Plaud scored Mr. Schmidt as a 5 on the Static 99R and correlated that score with the Routine Corrections Group recidivism rate of 15.2 % over a 5 year period. [R.E. 2 at 22].

Dr. Hastings scored Mr. Schmidt as a 5 on the Static 99R. [P.E. 3 at 19]. As for which set of recidivism norms to compare Schmidt to, Dr. Hastings adds the process for choosing between the Routine and High Risk/Need norm groups is unclear and remains relatively untested. Thus Dr. Hastings presents the data as a range of the two sets of norms. So according to Dr. Hastings, Static-99R scores of 5 are associated with sexual recidivism rates of 15 to 21% in five years and 32% in ten years (noting that there is currently no ten-year recidivism data for the Routine norm group). *Id*. Dr. Hastings also scored Schmidt on the 2002R as a score of 4, which equates to a sexual recidivism rate of 19-22% in five years. *Id*. at 20.

Dr. Zinik scored Mr. Schmidt as a 5 on the Static 99R with the same group comparisons as Dr. Hastings. [P.E. 7 at 17].

Dr. Watkins scored Mr. Schmidt as somewhere between and 3 and 4. [P.E. 5 at 16]. The score of 3 correlates with a group recidivism rate of 7.9% over 5 years for the Routine Sample and 14% over five years for the High Risk Sample. The score of 4 correlates with a group recidivism rate of 11% over 5 years for the Routine Sample and 17.3% over 5 years for the High Risk Sample. *Id*. at 17.

As for the dynamic risk factor analysis:

Dr. Saleh states that: there is no evidence that Mr. Schmidt suffers currently from cognitive distortions, and there is no evidence that he suffers currently from a destabilizing mental illness. His last offense was more than 15 years ago. Given his age (75) and the well documented medical literature on the decrease in sexual functioning with the aging process, his risk for sexual recidivism has decreased. There is also no evidence that his paraphilic disorder is currently symptomatic given the exemplary prison conduct. [R.E. 5 at 13].

Dr. Zinik states that: the only protective factor that applies to Mr. Schmidt is advanced age, that re-offending over 60 is a rare event, and offending over age 70 is even rarer. Mr. Schmidt reports that he has no libido now and has not been able to masturbate in the last 4 years, however, he can still engage in fondling and feels more comfortable with children than with adults. [P.E. 7 at 18-20].

Dr. Hastings states that: there is no recent evidence of sexual preoccupation. [P.E. 3 at 21]. He suffers from an emotional congruence with children by trying to serve as a mentor or teacher to them. *Id*. at 22. There is no evidence of general lifestyle impulsivity, and he has shown limited control in the past over his deviant sexual urges. *Id*. He has violated supervision on past sentences but has been compliant with rules while in prison. *Id*. at 23. It is difficult to conclude that he will not go back overseas like he did in 2002 even if he is on supervised release. *Id*. Given his age (75), he falls in an age cohort of offenders where recidivism in rare, however, he did offend when he was 61. *Id*. at 24.

Dr. Watkins states that: there is no evidence of Mr. Schmidt having sexual preoccupation during his 15 years in the BOP, he does not have access to his preferred victim pool. His past offenses show that he has an emotional congruence with children. There was no conclusive evidence about whether he suffered from lifestyle impulsiveness. Also, his advanced age is not now a protective factor because before he began his 15 year federal prison sentence, his first arrest for a sex offense was at age 41 and his most recent arrest was at age 61, thus there is no indication based on this historical information that his sex drive has decreased with age. [P.E. 5 at 19].

Dr. Plaud states that: in his past, his modus operendi of offending was opportunistic and not compulsive sexually driven conduct, thus Mr. Schmidt has the ability to monitor and control his impulses. [R.E. 3 at 3]. His age of 75 is a protective factor, he had excellent behavioral regulation while in federal prison, and there is an

absence of any risk relevant behaviors during the last 13 years. *Id*. There is a strong possibility that he has a significantly lowered sexual libido and erectile dysfunction now. Given his lifetime supervised release, there is no significant risk he will sexually re-offend. *Id*. Dr. Plaud cited to seven studies on age and recidivism showing that Mr. Schmidt's age is associated with a recidivism rate that is quite low. *Id*. at 5.

After considering the totality of the record in this case, the Court finds the issues of age, impaired libido, modus operandi of offending, and future release plan and lifetime supervision with GPS monitoring (along with U.S. Probation's recommendation for a half-way house) to be determinative of the third prong analysis under the Act in that Schmidt would not have serious difficulty refraining from sexually violent conduct or child molestation if released. Therefore, overall the Court finds the combined analysis of Drs. Saleh and Plaud to be more persuasive than that of Drs. Watkins, Zinik, and Hastings.

Dr. Saleh states that while there are some indicators of risk, the protective factors are simply too strong to overcome in this case. Schmidt is 75 years old, an age when sexual offending is very rare.

Dr. Saleh also focuses on the fact that Schmidt will be on lifetime supervised release with special sex offender conditions, including sex offender treatment, GPS monitoring, and likely a placement in a half-way house. Schmidt has stated that he will

comply with all conditions of his release. Dr. Saleh points out that Schmidt appears to have a clean disciplinary record in his current and past incarcerations.

Dr. Plaud explains that the conditions under which Schmidt offended in the past have a very low probability of being recreated going forward in time. He will be under strict supervision for the rest of his life. He will not be allowed to leave the country (and he will not have a passport) and return to return to a situation like the one in Cambodia or the Philippines. The underlying illegal sexual conduct in this case occurred in the context of Schmidt making opportunistic illegal choices and acting upon his sexual deviance, but not being compulsively driven by his sexual deviance. Dr. Plaud concludes that it is to be expected that Schmidt will maintain appropriate and legal control over his sexual impulses, which also have been significantly affected by age. Dr. Plaud also noted that Schmidt appears to have had some time in the community free of sexual offense, namely while he was in the military, as well as from 2000 to 2002, thus demonstrating an ability to control his behavior. It is noteworthy, that the last illicit sexual act committed by Schmidt took place in Cambodia, almost 15 years ago.

Unconvincingly, Drs. Hastings, Zinik, and Watkins discount the effects of Schmidt's age, modus operandi, and supervised release. In an overly simplistic way, these experts focus almost exclusively on Schmidt's past offenses, while ignoring his current age, exemplary conduct while incarcerated since 2004, modus operandi, and lifetime supervised release with specific sex offender conditions. *See United States v.*

*Antone*, 742 F.3d 151 (4th Cir. 2014) (reversing the commitment order for placing undue emphasis on the past and ignoring the present as well as an exemplary conduct while in federal prison on the underlying offense).

The United States locks men in a prison in Butner, North Carolina, if it believes that they have a serious mental disorder and would have serious difficulty in refraining from sexual misconduct. Just twenty years ago, this approach to crime prevention was controversial, with the Supreme Court deciding by one vote that such a system satisfied constitutional considerations. *Kansas v. Hendricks*, 521 U.S. 346 (1997). "The Federal Government undertakes activities today [a civil commitment power] that would have been unimaginable to the Framers…" *United States v. Comstock*, 560 U.S. 126, 148-49 (2010) (internal quotations and citations omitted).

"In the absence of clear and convincing proof that a serious mental impairment causes an individual to have serious difficulty in controlling his behavior, the constitution requires reliance on the criminal law, rather than a civil commitment, to deal with that risk." *United States v. Wilkinson*, 646 F. Supp. 2d 194, 209 (D. Mass 2009). As the government has not presented such clear and convincing proof, Schmidt may not be civilly committed.

For the foregoing reasons, the government has failed to show by clear and convincing evidence that Schmidt suffers from a serious mental illness, abnormality, or

disorder, as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released. Accordingly, the Court concludes that Schmidt is not a sexually dangerous person under the Adam Walsh Act and ORDERS that the government release Schmidt forthwith to the custody and supervision of the appropriate United States Probation Officer.

Respectfully submitted this the 20th day of February, 2018.

                              TARLTON POLK PLLC

                              /s/Raymond C. Tarlton
                              RAYMOND C. TARLTON
                              Attorney for Defendant-Respondent
                              150 Fayetteville Street, Suite 930
                              Raleigh, North Carolina 27601
                              Telephone: 919-948-6464
                              Fax: 919-400-4200
                              rtarlton@tarltonpolk.com
                              N.C. State Bar No. 38784
                              *Designation: CJA Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document has been served today, February 20, 2018, on the following attorney(s) via electronic delivery through the CM/ECF system:

Michael James, Esq.
Assistant United States Attorney
U.S. Attorney's Office
310 New Bern Avenue, Suite 800
Raleigh, NC 27601

Rudy E. Renfer, Esq.
Assistant United States Attorney
U.S. Attorney's Office
310 New Bern Avenue, Suite 800
Raleigh, NC 27601

G. Norman Acker, III, Esq.
Assistant United States Attorney
U.S. Attorney's Office
310 New Bern Avenue, Suite 800
Raleigh, NC 27601

/s/Raymond C. Tarlton
RAYMOND C. TARLTON
Counsel for Respondent