IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-HC-2008-BO

UNITED STATES OF AMERICA,      )
                Petitioner,    )
                               )
        v.                     )        **O R D E R**
                               )
RICHARD ARTHUR SCHMIDT,        )
                Respondent.    )

This cause comes before the Court following petitioner's motion to commit respondent,

Richard Arthur Schmidt, as a sexually dangerous person pursuant to the Adam Walsh Child

Protection and Safety Act of 2006, 18 U.S.C. § 4248. For the reasons that follow, the Court finds

that Mr. Schmidt is not sexually dangerous and orders his release from commitment.


## BACKGROUND

Petitioner ("the government") instituted this civil action pursuant to Title 18 of the United

States Code, Section 4248(a), seeking to commit respondent Schmidt ("respondent" or "Mr.

Schmidt") as a sexually dangerous person pursuant to the Adam Walsh Child Protection and

Safety Act of 2006 ("the Act"). The government filed a certificate stating that mental health

personnel for the Federal Bureau of Prisons ("BOP") had examined the respondent and issued a

preliminary determination that he was a sexually dangerous person within the meaning of the Act

[DE 1]. This is the second such certificate filed against this respondent; a previous certification

was dismissed for lack of jurisdiction following respondent's successful § 2255 motion, which

was later reversed by the Fourth Circuit. *United States v. Schmidt*, 845 F.3d 153 (4th Cir. 2017).

This certificate stayed the respondent's release from federal custody pending a hearing to determine whether the respondent qualifies for commitment as a sexually dangerous person. The government's petition was filed on January 11, 2017. Respondent's projected release date was January 20, 2017.

On January 10, 2018, the Court conducted an evidentiary hearing in this matter pursuant to 18 U.S.C. § 4247(d). The hearing concluded after testimony from a final expert on January 24, 2018. The government filed proposed findings of fact and conclusions of law on January 9, 2017. The respondent filed proposed findings of fact and conclusions of law on February 21, 2018. Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, and after due consideration of the evidence presented and arguments of counsel, the Court adopts in part respondent's findings of fact and conclusions of law, specifically respondent's Factual Background section. [DE 67 at 2-8]. The Court now holds that the government has failed to satisfy its burden to show by clear and convincing evidence that Respondent is sexually dangerous to others as defined by the Adam Walsh Act.

DISCUSSION

As a preliminary matter, this Court addresses respondent's statute of limitations argument. Respondent argues that because commitment under § 4248 is a civil action, the normal four-year civil statute of limitations applies. *See* 28 U.S.C. § 1658(a). Respondent began his term of incarceration on August 26, 2004. His certificate was filed on January 11, 2017, and the hearing in the action was held on January 10, 2018. Accordingly, respondent claims, the statute of limitations period began to run in 2004.

The Fourth Circuit held recently that the civil statute of limitations does not apply in cases under the Adam Walsh Act. *United States v. Searcy*, 880 F.3d 116 (4th Cir. 2018). There,

the Court found because those certified as sexually dangerous must be in federal custody at the time of certification, a de facto statute of limitations period already exists, and the additional catch-all period under 28 U.S.C. § 1658(a) is unnecessary. *Id.* at 122. The Court went on to find that these proceedings are not civil actions as envisioned by the statute. *Id.* at 124. Respondent's argument is entirely based on 28 U.S.C. § 1658(a). As the above case squarely addresses the question, respondent's motion is denied.

To order the commitment of a respondent pursuant to § 4248, a court must conclude, after an evidentiary hearing at which the government bears the burden of proof by clear and convincing evidence, that the respondent is as "sexually dangerous person" as defined by the Act. The government must show that (1) the respondent has engaged in or attempted to engage in sexually violent conduct or child molestation; (2) that the respondent suffers from a serious mental illness, abnormality, or disorder; and (3) as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released. 18 U.S.C. § 4248(d). ). "[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) (internal quotation marks, citations, and alterations omitted). If the Court finds that the government has satisfied its burden, the individual must be committed to a suitable facility for mental treatment until he is determined to no longer be sexually dangerous to others. 18 U.S.C. § 4248(d).

1. **Whether the respondent has engaged or attempted to engage in sexually violent conduct or child molestation.**

The Court finds, by clear and convincing evidence, that respondent has attempted to engage in child molestation. As the Fourth Circuit noted when reversing the district court's grant of respondent's § 2255 motion, respondent's convictions for sex offenses involving young boys are extensive and date back to 1984. *United States v. Schmidt*, 845 F.3d 153, 155 (4th Cir. 2017). Respondent was convicted of the federal crime that led to his current period of incarceration because he traveled to the Philippines and Cambodia and engaged in sexual contact with minor males. Respondent does not dispute this element, and all expert testimony aligned in agreement. This prong has been met.

## 2. Whether the respondent currently suffers from a serious mental illness, abnormality, or disorder.

To meet its burden on this second prong, the government must prove by clear and convincing evidence that respondent "suffers from a serious mental illness, abnormality, or disorder." 18 U.S.C. § 4248(d). Civil commitment is limited to individuals whose mental illness renders them dangerous beyond their control. *United States v. Francis*, 686 F.3d 265, 275 (4th Cir. 2012). The determination of whether an individual's mental illness rises to the level of a sexually dangerous person is fact specific as viewed by expert psychiatrists and psychologists. *Id.*

Although the phrase "serious mental illness, abnormality, or disorder" is not specifically defined, the Fourth Circuit has instructed courts that labeling a respondent with a "diagnosis" is merely a starting point and that "the true thrust of the § 4247(a)(6) inquiry [is] whether, on a case-specific basis, the respondent's underlying condition constitutes a serious functional impairment." *United States v. Caporale*, 701 F.3d 128, 137 n.4 (4th Cir. 2012). The Court in *Caporale* further noted that "a mental disorder or defect need not necessarily be one so identified

4

in the DSM in order to meet the statutory requirement." 701 F.3d at 136 (citing *United States v. Carta*, 592 F.3d 34, 39–40 (1st Cir. 2010)). Accordingly, the phrase "serious mental illness, abnormality, or disorder" in the Act is "a legal term of art" to be developed by the courts. *Caporale*, 701 F.3d at 136; *see also Kansas v. Hendricks*, 521 U.S. 346, 359 (*Hendricks*) (explaining that "the term 'mental illness' is devoid of any talismanic significance," and instructing that legislative development of specialized "[l]egal definitions . . . need not mirror those advanced by the medical profession").

Respondent has been diagnosed with pedophilic disorder. DSM-V(302.2). He is sexually attracted to prepubescent boys and has admitted to his lifelong sexual interest in them. All five experts who testified, Drs. Watkins, Zinik, Saleh, Plaud and Hastings, agreed in finding that respondent suffers from pedophilic disorder, sexually attracted to males, and that this disorder is serious for the purposes of the Adam Walsh Act. Dr. Plaud and Dr. Saleh held that as respondent was attracted to both prepubescent and pubescent young males, his disorder was not exclusive type, while Drs. Watkins, Zinik and Hastings found that it was exclusive type, based in part on the fact that his attraction was related to the smoothness of their skin. As either version is a serious mental disorder for the purposes of the Adam Walsh Act, and respondent does not challenge a finding under this prong, a determination of the level of exclusivity of his pedophilic disorder is not necessary here.

The Court finds that the government has proved by clear and convincing evidence that respondent has a serious mental illness, abnormality, or disorder.

**3. Whether as a result of the illness, abnormality, or disorder, the respondent would have serious difficulty in refraining from sexually violent conduct or child molestation if released.**

Though the government has proved prong one and prong two, commitment is nonetheless not warranted in this case because the government has not met its burden to establish, by clear and convincing evidence, that respondent would have serious difficulty in refraining from sexually violent conduct if released.

As noted by the Fourth Circuit in *United States v. Hall*,

[t]he "serious difficulty" prong of 4248's certification refers to the degree of the person's "volitional impairment," which impacts the person's ability to refrain from acting upon his deviant sexual interest. *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (noting that statutory requirements that couple proof of dangerousness with proof of a mental illness or abnormality "serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control"); *id.* at 357 (noting that civil commitment statutes may "provide[] for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety . . . provided the confinement takes place pursuant to proper procedures and evidentiary standards") (internal citations omitted); *see also Kansas v. Crane*, 532 U.S. 407, 414 (2002) (noting that "our cases suggest that civil commitment of dangerous sexual offenders will normally involve individuals who find it particularly difficult to control their behavior.").

554. F.3d 456, 463 (4th Cir. 2012). The Fourth Circuit has found that in weighing the serious difficulty prong, it is appropriate to consider the following factors: failures while on supervision; resistance to treatment; continued deviant thoughts; cognitive distortions; actuarial risk assessments; impulsiveness; and historical offenses. *Wooden*, 693 F.3d at 440. It should be noted, however, that this inquiry "will not be demonstrable with mathematical precision." *Kansas v. Crane*, 534 U.S. 407, 413 (2002) (*Crane*).

The Court therefore must consider both static and dynamic factors, historical behaviors and present impairment, in order to adequately assess whether respondent will have a serious difficulty in refraining from sexually deviant behavior if released. The Court cannot consider historical facts to the exclusion of present behavior because reliance on past behavior does "not allow for a respondent's subsequent growth." *United States v. Antone*, 742 F.3d 151, 169 (4th

6

Cir. 2014) (holding an experts opinion based solely on past behavior does not satisfy the government's heightened clear and convincing evidence burden). An individual's positive incarceration conduct is also relevant. *Id.* at 166-67. The Court must take a respondent where he stands at the time of civil commitment, not the time of original sentencing. *Id.* The Court declines to fully credit actuarial analyses and expert witness testimony that relies solely on respondent's past behavior to determine his current volitional impairment. The mere presence of a sexual attraction to minors is insufficient to meet the "serious difficulty" prong. It is the inability to refrain from acting on that attraction—the lack of brakes—that, once proved by the government, warrants civil commitment.

At the outset, in its discretion to "decide the proper weight to give the expert opinions," *United States v. Wood*, 741 F.3d 417, 425 (4th Cir. 2013), the Court declines to fully credit the assessments of Dr. Watkins. Dr. Watkins' conclusions are unsupported by her own analysis. For example, her actuarial assessment, the Static-99R, measured respondent as between a three and a four, a moderate risk category, and yet she stated the risk of reoffending was high. Pet. Ex. 5 at 15-17. Additionally, Dr. Watkins focused on respondent's behavior far in the past, such as his failure to complete the sexual offender treatment program at Johns Hopkins, to the exclusion of his present status. Pet. Ex. 5 at 20. Finally, Dr. Watkins conducted respondent's precertification assessment. Pet. Ex. 5 at 1-3. Accordingly, her testimony in this matter is not uninterested. For these reasons, the Court gives her testimony less weight.

The Fourth Circuit's suggested factors sort into three generalizable categories: a respondent's past behavior, expert analysis of a respondent's risk, and a respondent's current status. *See United States v. Wooden*, 693 F.3d 440 (4th Cir. 2012). These categories overlap and, often, as here, explain each other.

*History*

The government argues that respondent's previous failures on supervision are evidence of his lack of volitional control. Respondent has previously violated the terms of his supervision. Respondent's first guilty plea for third-degree sexual assault was entered on August 30, 1984, and he was next arrested on September 24, 1984. Pet. Ex. 10 ¶ 29. While on probation for a previous conviction in 1986, respondent was arrested for further sexual child abuse. Pet. Ex. 10 ¶ 33. He also violated the terms of his parole following his release from prison in 2000 by committing offenses against another child, and he fled the United States for the Philippines to avoid arrest for violating his parole in 2002, continuing on to Cambodia in 2003. Pet. Ex. 17.

Respondent also had an unsuccessful treatment program. He participated in sex offender treatment at the Bio-Sexual Psychohormonal Clinic at Johns Hopkins Hospital as a part of his sentence in 1985. Pet. Ex. 10 ¶ 29. The treatment, which was focused on injections of Depo-Provera, ended after respondent was again arrested.

This evidence is troubling, but the inquiry at step three is not whether someone who is a candidate for potential civil commitment has previously disregarded the law. The question is whether those previous violations provide evidentiary support for the proposition that respondent is incapable of controlling himself. While respondent did leave the country and further engage in sexual contact with boys, he has also been fully compliant while imprisoned.

Next, the government argues that the character of respondent's offending affects his ability to control his actions. Respondent groomed his victims, taking advantage of boys with troubled backgrounds. The evidence indicates he felt an emotional congruence with children. The abuses he committed were physical in nature, but stemmed not from a need for physical sexual gratification, but rather a physical expression of a sense of connection. Because of this,

8

according to the government, respondent's good behavior while in prison—his total lack of infractions, his lack of child pornography, the fact that he possessed no drawings or stories or other evidence of a continued fixation on boys—and his physical limitations, including an enlarged prostate, lower testosterone, and the inability to get or maintain an erection, do not militate in his favor, because his disorder presents as mainly a mental preoccupation anyway.

This argument fails. First, it fails from a practical standpoint. The above factors, if present, would be evidence that respondent lacks volitional control. Therefore, their absence must push in the opposite direction.

Second, the consequences of such a move of logic are troublesome. The manner in which a respondent's mental disorder manifests is obviously relevant to answering the question of whether he will be unable to keep from committing offenses in the future. But the government, in discounting the lack of external risk factors on the grounds that this particular respondent's pedophilic disorder is a highly internal one, is claiming that the relevant inquiry here is just internal. That is not the case. Prong three of the Adam Walsh Act is specifically about external behavior, because a chasm exists between doing something and just thinking about it. If it were not, the third prong would collapse back into the second.

*Expert Testimony*

Five experts testified as to respondent's risk. As discussed above, the Court elects to give Dr. Watkins' testimony less weight, apart from again emphasizing her determination that respondent scored a 3-4 on the Static-99R, which corresponds to moderate risk. Drs. Zinik, Plaud, Hastings and Saleh all scored respondent as a 5 on the Static 99R. Dr. Hastings and Dr. Zinik put his risk of recidivism at 15 to 21% over a five year period. Dr. Plaud found that the recidivism rate was 15.2% over five years. At the conclusion of five years, respondent will be

eighty years old. Dr. Zinik also conducted a Static-2002R assessment, on which respondent scored a 6, and the SVR-20, which examines a series of 20 risk factors. Dr. Zinik only determined that 7 of those factors were present. Pet. Ex. 7. Dr. Hastings also conducted a 2002R evaluation, scoring respondent at a 4. Pet. Ex. 3 at 20. As the experts reported, these assessments represent averages, and do not cleanly line up with any one individual's actual risk of offending.

The experts also evaluated dynamic risk factors and protective factors. Risk factors indicate the likelihood of recidivism, while protective factors work to lower those particular risks. Expert testimony on the risk factors focused on respondent's history, including, as discussed above, his failures on supervision. By far the strongest protective factor is respondent's advanced age, as he is currently 75 years old. He also has no libido or ability to get or sustain an erection. Pet. Ex. 7 at 18-20. Dr. Saleh found that there is no evidence that his disorder is currently symptomatic. Resp. Ex. 5 at 13.

Both Dr. Saleh and Dr. Plaud testified that respondent would not have serious difficulty refraining from sexually violent conduct or child molestation if released. Dr. Hastings and Dr. Zinik, while coming to similar conclusions in their actuarial analysis, gave less weight both to respondent's age and his lack of infractions over the last fifteen years in finding that he would have difficulty. Because this Court finds that respondent's age and current status are highly relevant, it chooses to give Dr. Saleh and Dr. Plaud's testimony more weight. While respondent was first convicted later in life than others committing similar offenses, at the age of 41, he is still now 75 years old. Additionally, Dr. Hastings and Dr. Plaud thought the circumstances of respondent's release were relevant. Respondent will be placed on lifetime supervised release with conditions specifically tailored to a sex offender, likely including GPS monitoring and treatment. Respondent will not have a passport nor permission to leave the country.

*Current Status*

As the discussion of risk factors indicated, respondent's current status is highly relevant, especially his advanced age. To begin, Dr. Saleh testified that respondent did not suffer from cognitive distortions or refuse to acknowledge his disorder. That conclusion was borne out by the testimony of respondent himself. Respondent did not attempt to minimize or mischaracterize his history. He acknowledged clearly and without obfuscation both his disorder and the negative effects his behavior had on his victims. Dr. Hastings also reported that there is no recent evidence of sexual preoccupation or lifestyle impulsivity. Pet. Ex. 3 at 21-22. Dr. Plaud testified that respondent was opportunistic, not compulsive, in his previous offenses, indicating that respondent has self-control. Likewise, Dr. Plaud found that respondent's clear ability to manage his impulses and behavior while in prison was relevant. Resp. Ex. 3 at 3.

The government attempts to discount respondent's clean record over the past fifteen years on the grounds that he has been incarcerated. First, as the Fourth Circuit has determined, a period of incarceration does not freeze the inquiry at the moment an inmate entered prison. *United States v. Antone*, 742 F.3d 151, 167 (4th Cir. 2014). Time passes. Respondent's volitional control as it is now is the subject of this inquiry, not his posture in 1985, or 2002. The crimes he committed then resulted in his arrest, judgment, and sentencing. He is not before this Court to be re-punished; rather, to determine whether his severe mental disorder is such that there is clear and convincing evidence he will be unable to keep from molesting children from this point forward. Much of the expert testimony offered by the government would have been identical if this inquiry had been held in 2003. The recent years, in which respondent has shown volitional control, even in prison, are evidence in his favor.

There is a second concern. This court only has jurisdiction over this proceeding because respondent is in federal custody. 18 U.S.C. § 4248(a). Federal prison is by design an environment with limited stimuli. Prisoners do not have access to many things free individuals have access to, including the ability to choose who they interact with. If respondent had, during his time in federal prison, managed to interact with a child, that would be strong evidence in the government's favor here. So too would have been his possession of child pornography or other evidence of an inability to control his behavior. That he has not had that access is in part because of what federal prison is like. Without that imprisonment, respondent's commitment would be impermissible as a matter of law. Therefore, his lack of infractions remains relevant, and supports the conclusion that the government has not met its burden.

For the foregoing reasons, this Court finds that the third prong of the Adam Walsh Act has not been established by clear and convincing evidence.

## CONCLUSION

Accordingly, the Clerk is DIRECTED to enter judgment in favor of the Respondent Richard Schmidt and against the Petitioner. The government is ORDERED to release the Respondent to the custody of the appropriate United States Probation Office.

SO ORDERED, this **7** day of ~~February~~ March, 2018.

_Terrence W. Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE